UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN TYRONE JOHNSON,

        Plaintiff,

                                Case No. 16-13947

v.

                                Paul D. Borman
UNITED STATES POSTAL SERVICE       United States District Judge
and AMERICAN POSTAL WORKERS
UNION HOLDING CORPORATION,

        Defendants.
_____/

**<u>OPINION AND ORDER:</u>**
**<u>1) GRANTING DEFENDANT UNITED STATES POSTAL SERVICE'S</u>**
**<u>MOTION TO DISMISS COUNT I (ECF No. 22);</u>**
**<u>2) GRANTING DEFENDANT AMERICAN POSTAL WORKERS UNION</u>**
**<u>HOLDING CORPORATION'S MOTION TO DISMISS COUNT III (ECF</u>**
**<u>No. 25); AND</u>**
**<u>3) GRANTING DEFENDANT UNITED STATES POSTAL SERVICE'S</u>**
**<u>MOTION FOR SUMMARY JUDGMENT AS TO COUNT II (ECF No. 32)</u>**

This action was brought by Plaintiff Kevin Tyrone Johnson against the

United States Postal Service ("**USPS**"), his former employer, and the American

Postal Workers Union ("**APWU**"),[1] his former union. Plaintiff was removed from

his employment after USPS determined that he violated his probationary "Last

Chance Agreement" by incurring too many unexcused absences, and that removal

_____

[1] As explained below, the named Defendant as to Plaintiff's claim against APWU
is now the American Postal Workers Union Holding Company. "APWU" as used
in this Opinion and Order refers to that entity.

was upheld in arbitration. Plaintiff filed suit on November 7, 2016. (ECF No. 1.) He then filed an Amended Complaint on March 1, 2017, replacing original Defendant American Postal Workers Union with current Defendant American Postal Workers Union Holding Company. (ECF No. 16.) The Amended Complaint asserts three claims: one against USPS for breach of the CBA (Count I); one against USPS for discriminatory termination (Count II); and one against APWU for breach of the duty of fair representation (Count III).

Three Motions are now before the Court: separate Motions to Dismiss the two counts (Count I and Count III) that make up Plaintiff's hybrid claim filed by USPS and APWU, as well as USPS's Motion for Summary Judgment on Plaintiff's discriminatory termination claim (Count II), filed early with the Court's leave. Each Motion attacks the count at which it is aimed on untimeliness grounds, and each has merit. For his part, Plaintiff has not justified equitable tolling of the limitations period as to his hybrid claim, and has not directly and sufficiently responded to USPS's Motion for Summary Judgment on Count II. The Court will therefore grant all three Motions and dismiss the case.

## I.    BACKGROUND

Plaintiff began working for USPS in January of 1996. At all relevant times he worked as a Laborer Custodian at the Michigan Metroplex Processing and Distribution Center in Detroit, Michigan. (ECF No. 16, Am. Compl. ¶ 1.) The

terms of Plaintiff's employment were governed by a Collective Bargaining Agreement ("**CBA**"), supplemented by an Employee and Labor Relations Manual ("**ELM**"). (Am. Compl. ¶ 4.)

USPS issued Plaintiff a removal notice in September 2013. (Am. Compl. ¶ 10.) Plaintiff and USPS then entered into a December 2, 2013 "Last Chance Agreement" ("**LCA**") through which Plaintiff could save his job. (*Id*.; Am. Compl. Ex. A, Last Chance Agreement at 3, Pg ID 138.) The LCA provided that the removal would be held in abeyance for a one-year probationary period, and that if Plaintiff fully complied with the LCA during that period, he would then continue with his employment as though the LCA had never existed. (Am. Compl. Ex. A, Last Chance Agreement at 4-5, Pg ID 139-40.) Among other things, the LCA required that Plaintiff "maintain regular attendance," defined as "incur[ring] no more than three unscheduled, non-FMLA absences within any period of ninety (90) consecutive days during the term of this agreement." (Am. Compl. ¶ 11; Am. Compl. Ex. A, Last Chance Agreement at 4, Pg ID 139.)

On April 6, 2014, USPS reinstated Plaintiff's removal, alleging that he violated the "regular attendance" provision of the LCA by missing work on December 12, 2013; on January 16, 2014; on March 10, 2014; and on March 11, 2014. USPS also alleged that he was tardy on December 31, 2013; on January 21, 2014; and on January 23, 2014. (Am. Compl. ¶ 12.) Plaintiff alleges that at all

relevant times, he had "two Family Medical Leave Act [claims] open which provided to him up to 12 weeks of unpaid leave during a 12 month period, either of which was sufficient to make any absence on December 12, 2013 and January 16, 2014 an FMLA absence and therefore not a violation of the LCA." (Am. Compl. ¶ 13.)

In April 2014, APWU initiated grievance proceedings to challenge this removal decision. After the grievance was unsuccessful at the first two stages, an arbitration was held on May 20, 2014. Plaintiff alleges, however, that at no point throughout these proceedings did APWU file a grievance related to the "denial of FMLA leave" that Plaintiff alleges USPS committed by removing him for absences on what should have been FMLA leave days. (Am. Compl. ¶ 14-16.)

A decision on the arbitration was issued on April 13, 2015. (Am. Compl. Ex. B, Arbitration Decision.) Finding that USPS had "established its case by clear and convincing evidence," Arbitrator Betty Widgeon denied the grievance in its entirety. (*Id.* at 17, Pg ID 152.)

On June 27, 2014, Plaintiff filed a complaint with USPS's Equal Employment Opportunity ("**EEO**") department, alleging race and gender discrimination. (ECF No. 32, Def. USPS's Mot. Summ. J. Ex. 1A, Formal Complaint of Discrimination.) That complaint was dismissed on December 17, 2014. (Def. USPS's Mot. Summ. J. Ex. 1B, Final Agency Decision.) Cheryl

Hendon, an EEO Services Analyst for USPS (and the individual who signed the dismissal of Plaintiff's EEO complaint) averred in a sworn declaration that she processed and mailed the dismissal to Plaintiff on December 17, 2014. (Def. USPS's Mot. Summ. J. Ex. A, Declaration of Cheryl Hendon ¶ 7.) Hendon also averred that based on her searches of USPS's EEO records, Plaintiff did not appeal the dismissal or file any subsequent complaints. (Hendon Decl. ¶¶ 2-3, 8-9.)

On February 13, 2017, USPS filed what was essentially a "hybrid" motion seeking dismissal of Count I and summary judgment on Count II. (ECF No. 9.) The Court initially dismissed the motion for summary judgment without prejudice, citing this Court's Practice Guidelines, which state that summary judgment motions will not be entertained prior to the close of discovery absent special circumstances. (ECF No. 14.)

The instant Motions to Dismiss were filed by USPS and APWU on March 15 and March 22 of 2017, respectively. (ECF No. 22, Def. USPS's Mot. Dismiss; ECF No. 25, Defendant APWU's Mot. Dismiss.) Plaintiff filed a combined Response on April 5, 2017.[2] (ECF No. 27, Pl.'s Resp.) Both Defendants filed timely reply briefs on April 17, 2017. (ECF No. 29, Def. APWU's Repl. Br. Supp.

_____

[2] Plaintiff's combined Response also addressed USPS's then-pending Motion for Leave to File Motion for Summary Judgment as to Count II (ECF No. 23), which the Court granted on May 22, 2017 (ECF No. 31). USPS filed its Motion for Summary Judgment promptly thereafter (ECF No. 32), and the Court's analysis of that Motion is contained in Section III.B of this Opinion and Order.

Mot. Dismiss; ECF No. 30, Defendant USPS's Repl. Br. Supp. Mot. Dismiss.)

The Court granted USPS's motion for leave to file an early summary judgment motion. (ECF No. 31.) Thereafter, USPS filed the instant Motion for Summary Judgment. (ECF No. 32, Def. USPS's Mot. Summ. J.)

The Court held a hearing on both Motions to Dismiss on June 8, 2017, and then a separate hearing on USPS's Motion for Summary Judgment on July 31, 2017.

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012).

To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555 (2007)). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay*, 695 F.3d at 539 (internal citations and quotation marks omitted).

In other words, a plaintiff must provide more than "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The Sixth Circuit recently reiterated that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

A court ruling on a Rule 12(b)(6) motion to dismiss "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir. 2001)).

**B.     Motion for Summary Judgment**

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of a motion for summary judgment where proof of that fact 'would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.'" *Dekarske v. Fed. Exp. Corp.*, 294 F.R.D. 68, 77 (E.D. Mich. 2013) (Borman, J.) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"In deciding a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party." *Perry v. Jaguar of Troy*, 353 F.3d 510, 513 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). At the same time, the non-movant must produce enough evidence to allow a reasonable jury to find in his or her favor by a preponderance of the evidence, *Anderson*, 477 U.S. at 252, and "[t]he 'mere possibility' of a factual dispute does not suffice to create a triable case." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004) (quoting *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Instead, "the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) (quoting *Lewis v. Philip Morris Inc.*,

355 F.3d 515, 533 (6th Cir. 2004)). That evidence must be capable of presentation in a form that would be admissible at trial. *See Alexander v. CareSource*, 576 F.3d 551, 558–59 (6th Cir. 2009).

### III.  DISCUSSION

Defendants challenge each of the three claims asserted in this action on similar procedural grounds: each claim was filed after the applicable time limitations period had expired, and is therefore time-barred. Defendants' arguments are persuasive; Plaintiff has not persuaded the Court that equitable tolling of the limitations period should be applied.

While Plaintiff failed to separately respond to USPS's Motion for Summary Judgment on Count II, his initial generalized response to all three motions does not provide a basis for rejecting USPS's Motion for Summary Judgment. Accordingly, the Court will grant all three of Defendants' Motions, and dismiss Counts I and III pursuant to Fed. R. Civ. P. 12(b)(6), and grant summary judgment on Count II pursuant to Fed. R. Civ. P. 56(a).

### A.  Defendants' Motions to Dismiss

Together, Count I (asserting a claim against USPS for breach of the CBA) and Count III (asserting a claim against APWU for breach of the duty of fair representation) of the Amended Complaint constitute a "hybrid" action, authorized by a specific provision of the Postal Reorganization Act of 1970. *See* 39 U.S.C. §

1208(b) (granting district courts jurisdiction over "[s]uits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees . . . without respect to the amount in controversy"). Although such actions arise under a federal statutory provision that relates to USPS in particular, they are also governed by case law interpreting Section 301(a) of the Labor Management Relations Act of 1957 ("**LMRA**"), 29 U.S.C. § 185, which is the statutory basis for hybrid actions against employers and unions in general. *See Lawson v. Truck Drivers, Chauffeurs & Helpers, Local Union 100*, 698 F.2d 250, 255 (6th Cir. 1983) ("This Circuit and our sister circuits have uniformly held that 39 U.S.C. § 1208(b) is an analogue of Section 301(a) of the Labor Management Relations Act of 1957 . . . and have consistently applied § 301 law to suits brought pursuant to 39 U.S.C. § 1208(b).") (collecting cases).

Both Defendants argue that Plaintiff filed this lawsuit well outside of the six-month limitations period that applies to § 1208(b) hybrid actions.[3] Plaintiff argues that a different limitations period should apply. But if the limitations period was six months, Plaintiff argues, then the limitations period should be equitably tolled, mainly owing to Defendants' failure to inform him of it, as well as his inability to

---

[3] APWU makes a separate argument that the union itself (the original named Defendant) rather than its holding company (the current named Defendant) is the correct party, since the union was the exclusive collective bargaining representative for Plaintiff. Because the Court finds that Plaintiff's claim against APWU is time-barred regardless of which party is the proper Defendant, the Court need not address this issue.

afford legal representation until after the period expired.

Plaintiff's brief in response to the two instant Motions to Dismiss advances an argument that the pleadings do not "show beyond doubt that [Plaintiff] can prove no set of facts entitling him to the relief sought" (Pl.'s Resp. at 13, Pg ID 259), and cites *Conley v. Gibson*, 355 U.S. 41 (1957), as the governing precedent. (Pl.'s Resp. at 12, Pg ID 258 ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") (quoting *Conley*, 355 U.S. at 45-46).) *Conley* has not been binding precedent for over a decade. The Supreme Court overruled the *Conley* standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561–62 (2007). *Bailey v. City of Ann Arbor*, 860 F.3d 382, 388-89 (6th Cir. 2017) ("[Plaintiff] insists that the 'no set of facts' pleading standard articulated in [*Conley*] remains good law and applies to this claim. That is wrong. The Supreme Court overruled the *Conley* standard in [*Twombly*].") (internal citations omitted).

### 1. Plaintiff's claim was subject to a six-month limitations period.

There is abundant authority to support the proposition that § 1208(b) hybrid actions are subject to a six-month limitations period.

First, Supreme Court precedent clearly establishes that analogous hybrid actions that are brought under Section 301(a) of the LMRA have a six-month

limitations period, *see DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169–72 (1983), and the Sixth Circuit has clearly held that LMRA case law applies to § 1208(b) hybrid actions as well. See *Lawson*, 698 F.2d at 255.

Second, other courts in this District have applied the six-month limitations period from LMRA case law to § 1208(b) hybrid actions. *See, e.g., Kaiser v. U.S. Postal Serv.*, 785 F. Supp. 648, 655 (E.D. Mich. 1992) (explaining that a § 1208(b) "'hybrid' action is subject to a six-month statute of limitations"); *Kroll v. United States*, 832 F. Supp. 199, 204 n.1 (E.D. Mich. 1993) (noting that "plaintiff's claim would fail under 39 U.S.C. § 1208(b) because plaintiff has failed to comply with the six-month statute of limitations" applicable to LMRA actions), *aff'd*, 58 F.3d 1087 (6th Cir. 1995).

USPS notes in its Motion to Dismiss that at least two other circuits have reached the same conclusion, and no circuit has reached a contrary result. (*See* Def. USPS's Mot. Dismiss at 12-13, Pg ID 175-76 (citing *Trent v. Bolger*, 837 F.2d 657, 659 (4th Cir. 1988) and *Abernathy v. U.S. Postal Serv.*, 740 F.2d 612 (8th Cir. 1984)).)

Finally, the Sixth Circuit has itself recognized a six-month limitations period for § 1208(b) hybrid actions in at least two unpublished decisions. *See Teague v. U.S. Postal Service*, 208 F.3d 215, *1 (6th Cir. 2000) (unpublished); *Madar v. Runyon*, 178 F.3d 1295, *1 (6th Cir. 1999) (unpublished).

Plaintiff points out in his Response that the Sixth Circuit has not conclusively settled the question of what limitations period applies to § 1208(b) hybrid actions. Further, at the June 8, 2017 hearing on the instant Motions to Dismiss, Plaintiff's counsel argued (for the first time) that this Court should apply Michigan's residual six-year limitations period, set forth in Mich. Comp. Laws § 600.5813, to this action. This argument is unpersuasive. To begin with, it is clear that the only vehicle available to Plaintiff for the claims asserted in this action is federal statutory law, specifically § 1208(b).

Addressing a very similar statute-of-limitations issue, a district court in the Northern District of Ohio held (in an opinion subsequently affirmed by the Sixth Circuit) that

> the principles of law which have been created by the courts for § 301 [of the LMRA] must, by analogy, also apply to § 1208(b). This includes the doctrine of preemption, which mandates that when a claim is brought involving state law principles, such as breach of contract, and resolution of that claim necessarily requires interpretation of a collective bargaining agreement, state law is preempted and the suit is deemed one under § 301.

*Edwards v. Nat'l Post Office, Mail Handlers, Watchmen, Messengers & Grp. Leaders Div. of Laborers' Int'l Union of N. Am., AFL-CIO Local Union 304*, No. 90-CV-2121, 1991 WL 495637, at *4 (N.D. Ohio Apr. 30, 1991) (citing *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 209–210 (1985) and *O'Shea v. Detroit News*, 887 F.2d 683, 686 (6th Cir. 1989), *aff'd*, 951 F.2d 349 (6th Cir. 1991). And

although Count I of the Amended Complaint is entitled "BREACH OF CBA/VACATE ARBITRATION AWARD" (Am. Compl. at 6, Pg ID 126), the allegations contained within that Count make clear that the claim is premised squarely on the CBA: Plaintiff alleges therein that the arbitration award "did not draw its essence from the CBA, LCA, or ELM" and that the arbitrator improperly construed those documents, among other similar allegations (Am. Compl. ¶¶ 18-22). Accordingly, any attempt by Plaintiff to obtain vacatur of the arbitration award could only be made through a § 1208(b) hybrid claim. Indeed, Plaintiff's counsel acknowledged as much on the record at the June 8, 2017 hearing. Rather than arguing that the Amended Complaint asserts a state-law claim in addition or in the alternative to the § 1208(b) claim, Plaintiff takes the position that the limitations period applicable to a § 1208(b) hybrid claim should be borrowed from state law, and cites *Badon v. General Motors Corp.*, 679 F.2d 93 (6th Cir. 1982), for this proposition.

In *Badon*, the Sixth Circuit applied the LMRA's six-month limitations period to an LMRA hybrid action because Michigan law did not provide guidance as to what the appropriate limitations period should be. *See id.* at 99-100. At the time that *Badon* was decided, governing U.S. Supreme Court precedent required that federal courts borrow from state law in determining the limitations period applicable to an LMRA hybrid action. *United Parcel Service, Inc. v. Mitchell*, 451

U.S. 56, 60 (1981) ("[T]he timeliness of a § 301 suit . . . is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations.") (quoting *Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704–705 (1966)). But that proposition was expressly rejected by the Supreme Court the year after the Sixth Circuit decided *Badon*; the Supreme Court established conclusively that the LMRA's six-month limitations period provided for in 29 U.S.C. § 160(b)—and not any state statute of limitations—is the proper basis for determining the timeliness of hybrid actions under the LMRA. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169–72 (1983). As this applies by extension to § 1208(b) hybrid actions like the instant case, *Badon* is inapposite.

The same is true of the other two cases that Plaintiff's counsel cited at the June 8, 2017 hearing: *Rowry v. Univ. of Michigan*, 441 Mich. 1 (1992), and *City of Ann Arbor v. AFSCME Local 369*, 284 Mich. App. 126 (2009). Neither of these decisions involved a hybrid action under either § 1208 or the LMRA, and so their discussion and ultimate application of state statutes of limitations is not relevant to this action.

Thus, there is strong authority for the proposition that the LMRA's limitations period applies to this action; Plaintiff has not provided any persuasive reason to contravene it. The Court finds that the limitations period applicable to Plaintiff's § 1208(b) claim as set forth in Counts I and III of the Amended

Complaint was six months.

## 2. Plaintiff filed this action after the limitations period expired, and is not entitled to equitable tolling.

At the center of each Defendant's Motion to Dismiss is an argument that Plaintiff failed to file suit within the six-month limitations period. Both Defendants note in particular that while Plaintiff's negative arbitration decision was rendered in April of 2015 and he was removed in June of 2015, he did not file this lawsuit until November of 2016. Plaintiff maintains that the Court should toll the limitations period for equitable reasons. The Court concludes that Plaintiff has not made a satisfactory case for equitable tolling; the Court declines to award him this relief.

For guidance on when the six-month limitations period begins to run in § 1208(b) hybrid actions, case law interpreting the analogous § 301 of the LMRA is once again instructive. "The six-month statute of limitations that applies to hybrid § 301 claims is measured from the date on which the employee knew or should have known of the union's or employer's final actions constituting the alleged violations, whichever occurred later." *Hollingsworth v. Ford Motor Co.*, 644 F. App'x 496, 501 (6th Cir. 2016) (citing *Robinson v. Cent. Brass Mtg. Co.*, 987 F.2d 1235, 1239 (6th Cir. 1993)). "When a Union refuses to arbitrate a grievance, or withdraws representation, the claim arises when the plaintiff knew or should have

known that the Union had elected to proceed no further on his behalf. A decision by a Union not to arbitrate a claim can trigger a plaintiff's knowledge of the acts constituting the violation." *Potts v. Am. Bottling Co.*, 595 F. App'x 540, 543 (6th Cir. 2014) (citing *Schoonover v. Consol. Freightways Corp. of Del.*, 49 F.3d 219, 221 n.1 (6th Cir. 1995) and *McCreedy v. Local Union No. 971, UAW*, 809 F.2d 1232, 1236 (6th Cir. 1987)).

"[T]he doctrine of equitable tolling is used sparingly by federal courts." *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010). Still, equitable tolling is warranted in limited circumstances. First, a plaintiff's "pursuit of internal union remedies—such as the filing of a grievance or the filing of an internal union appeal—can . . . toll the limitations period if the internal union process can afford the plaintiff at least some relief from a defendant." *Hollingsworth*, 644 F. App'x at 503 (citing *Robinson*, 987 F.2d at 1242-43). Second, the limitations period may be tolled on the basis of fraudulent concealment if Plaintiff can "allege and establish that: 1) defendants concealed the conduct that constitutes the cause of action; 2) defendants' concealment prevented plaintiffs from discovering the cause of action within the limitations period; and 3) until discovery, plaintiffs exercised due diligence in trying to find out about the cause of action." *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 422 (6th Cir. 2009). Lastly, in far more general terms, the Sixth Circuit has identified

five factors to be considered in determining whether equitable tolling is appropriate in a given case. Those factors are: (1) whether the plaintiff lacked actual notice of the filing requirements; (2) whether the plaintiff lacked constructive notice, i.e., his attorney should have known; (3) the diligence with which the plaintiff pursued his rights; (4) whether there would be prejudice to the defendant if the statute were tolled; and (5) the reasonableness of the plaintiff remaining ignorant of his rights.

*Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991) (citing *Wright v. State of Tenn.*, 628 F.2d 949 (6th Cir. 1980) (en banc)). By itself, "the absence of prejudice to the defendant employer 'is not an independent basis for invoking the doctrine and sanctioning deviations from established procedures.'" *Steiner v. Henderson*, 354 F.3d 432, 437 (6th Cir. 2003) (quoting *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (per curiam)).

The Amended Complaint itself does not set forth any allegations that would justify equitable tolling. Plaintiff has, however, attached to his Response to the instant Motions to Dismiss an Affidavit describing certain circumstances surrounding his arbitration, and he argues that those circumstances support tolling the limitations period in this case. (Pl.'s Resp. Ex. B, Affidavit of Kevin Tyrone Johnson.) Plaintiff styles this submission as an affidavit pursuant to Fed. R. Civ. P. 56(d), under which a party opposing a summary judgment motion may show that "for specified reasons, it cannot present facts essential to justify its opposition." Even putting aside that the averments in the Affidavit pertain to Plaintiff's hybrid

claim (which is the subject of Rule 12 motions to dismiss) rather than his discrimination claim (which is the subject of a Rule 56 summary judgment motion), the Court will not defer deciding the instant Motions to Dismiss on the basis of the Affidavit. As discussed below, neither the facts averred in the Affidavit nor any reasonable inferences that could be drawn from them could mitigate the deficiencies in Plaintiff's claims.

In the Affidavit, Plaintiff avers that although he learned of the unfavorable arbitration decision in a phone call from an APWU representative and then received a copy of the decision by mail, at no point did APWU or USPS inform him of any rights he had "to challenge the Decision and the deadline to do so." (Johnson Aff. ¶¶ 5-7.) Plaintiff further avers that he made attempts to contact the local APWU president to inquire about his rights to challenge the decision and any associated deadlines, but never received a response. (*Id.* ¶¶ 8-9.) Lastly, Plaintiff avers that he was unable to afford an attorney (or otherwise obtain the services of one) until September 2016, at which point he retained his present counsel and learned of the six-month limitations period. He states that "[h]ad the APWU or USPS informed me of my right to challenge the Arbitration Decision and the deadline to do so I would have done whatever was necessary to either retain an attorney to challenge the Decision or do so on my own." (*Id.* ¶¶ 10-14.)

Plaintiff argues that these facts justify tolling of the limitations period in his

case. For the reasons set forth below, they do not.[4]

### i. Pursuit of internal union remedies

Plaintiff makes no allegation that he pursued any internal remedies with APWU subsequent to the arbitration decision. Indeed, there is no basis for concluding that there were any to pursue. APWU's position is that "Plaintiff has no post-arbitration remedies available to him other than those he has already pursued" (Def. APWU's Mot. at 9, Pg ID 286), and that Plaintiff's only means of challenging the arbitration decision was to file a hybrid action against USPS and APWU, as he has done here.

The record does not contain the CBA in full, nor any other documents that lay out the internal grievance procedures governing Plaintiff's employment. Even so, Plaintiff has not provided the Court with any legal authority establishing that his attempts to contact APWU representatives in order to learn about avenues for

---

[4] Even if a hybrid claim accrues against both of the defendants at the same time, "the limitations period does not necessarily begin to run against both defendants at the same time; rather, the limitations period can be tolled against one defendant while it runs against the other." *Hollingsworth*, 644 F. App'x. at 503. Most of the facts in Plaintiff's Affidavit have to do with acts and (predominantly) omissions by APWU, though he does state in passing that both APWU and USPS failed to inform him of his rights and obligations following the arbitration decision. The facts in Plaintiff's Affidavit advance less of a justification for equitable tolling as against USPS than they do as against APWU. However, those facts are still insufficient to justify equitable tolling even against APWU. Although APWU is the focus of this analysis, the outcome as to USPS would be the same as that for APWU.

challenging the arbitration decision constitutes "pursuit of internal remedies" for equitable tolling purposes—nor does he expressly argue the point. The Court finds that this basis for equitable tolling is not applicable here.

### ii. Fraudulent concealment

Key to a finding of fraudulent concealment for equitable tolling purposes is an allegation by the plaintiff that "defendants concealed *the conduct that constitutes the cause of action*." *Egerer*, 556 F.3d at 422 (emphasis added). Although Plaintiff invokes the doctrine of fraudulent concealment, the averments that he uses to support its application are essentially that APWU did not affirmatively disclose to him that a six-month limitations period would apply to any hybrid action he might bring against USPS and APWU.

Even if these averments were enough to demonstrate an affirmative act or acts of concealment on APWU's part—and it is doubtful that they are—they certainly do not show concealment of the conduct that supports Plaintiff's claimed cause of action. A hybrid claim like Plaintiff's is based on parallel allegations that (1) the employer breached a collective bargaining agreement and (2) the union breached a duty of fair representation. APWU's failure to notify Plaintiff of the limitations period applicable to such an action is not the illegal conduct over which he is now suing APWU. The allegations that underpin Plaintiff's claim against APWU are that APWU refused to file a grievance on his behalf regarding denial of

FMLA benefits, failed to counsel Plaintiff on alternatives to the grievance procedures, failed to introduce evidence of discriminatory treatment at the arbitration hearing, and presented prejudicial and irrelevant evidence at that same hearing. (Am. Compl. ¶¶ 30-33.)

Plaintiff has not alleged that APWU concealed any of these alleged facts from him. Nor can he, since Arbitrator Widgeon's decision reflects that Plaintiff both attended and testified at the arbitration hearing, and was therefore aware of the particulars of APWU's representation of him at that hearing. (ECF No. 19, Ex. Am. Compl. at 21-24, Pg ID 156-59.) Accordingly, Plaintiff is not entitled to equitable tolling on fraudulent concealment grounds.

### iii. Five-factor test

Finally, Plaintiff cites Sixth Circuit case law identifying factors relevant to equitable tolling generally: actual and/or constructive notice of filing requirements, diligence by the plaintiff in pursuing his rights, reasonableness of the plaintiff remaining ignorant of his rights, and prejudice to the defendant(s) in tolling the limitations period. (The last of these, as noted above, is not enough by itself to justify the remedy.) Plaintiff's case for equitable tolling based on these factors falls short of justifying the remedy.

Plaintiff asserts that had he been aware of the six-month limitations period applicable to his claim he would have met the deadline, and essentially argues that

he was not aware of the deadline for two reasons: because APWU failed to inform him that there was one despite his attempts to contact a representative, and because he was unable to afford an attorney until September 2016, which is when he belatedly learned of the limitations period.

Taking Plaintiff's allegations (including the averments in his Affidavit) as true, the Court can infer that Plaintiff did not have actual notice of his deadline. But the other factors—whether he had constructive notice, whether he was diligent in pursuing his rights, and whether his ignorance was reasonable—must considered in light of the conclusively settled principle that "[i]gnorance of the legal process alone will not provide the basis for an equitable tolling claim." *Jones v. General Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991) (citing *Campbell v. Upjohn Co.*, 676 F.2d 1122, 1127 (6th Cir. 1982)). Courts have consistently refused to employ equitable tolling as to plaintiffs who filed time-barred claims because they only consulted attorneys after the limitations period expired. *See, e.g., Rose*, 945 F.2d at 1336 ("Basically, Rose's arguments boil down to the fact that he did not know about his statutory rights until he saw an attorney after the expiration of the limitations period. Absent a showing that he was somehow deterred from seeking legal advice by his employer, this is simply not enough to warrant equitable tolling."); *LaCroix v. Detroit Edison Co.*, 964 F. Supp. 1144, 1149 (E.D. Mich. 1996) (absent evidence that the defendant "did anything to preclude Plaintiff from

consulting with a lawyer during the [limitations] period[,] Plaintiff simply failed to exercise reasonable diligence in pursuing her rights [and thus] is not entitled to an equitable tolling of the limitations period"). Plaintiff has not claimed that USPS or APWU acted in any way to deter him from seeking legal assistance, nor established that either Defendant had any obligation to inform him of the applicable limitations period.

Plaintiff's other argument in favor of equitable tolling is that he lacked the resources to hire an attorney until September of 2016. This sort of hardship is neither insubstantial nor irrelevant to the issue of equitable tolling. But "[b]oth the Supreme Court and the Sixth Circuit have repeatedly declined to toll the limitations period where the plaintiffs have failed to demonstrate extreme circumstances." *Jenkins v. Widnall*, 211 F.3d 1269 (6th Cir. 2000) (upholding the district court's refusal to toll the limitations period where the plaintiff argued she missed the filing deadline by two days due to medical conditions). And above all, "[t]he burden of demonstrating the appropriateness of equitable tolling lies with the plaintiff." *Hardy v. Potter*, 191 F. Supp. 2d 873, 879 (E.D. Mich. 2002); *see also Vana v. Mallinckrodt Med., Inc.*, 70 F.3d 116 (6th Cir. 1995) (noting that after the defendant raised a statute of limitations defense, the plaintiff "bore the burden of showing that equitable tolling was appropriate"). Here, Plaintiff has provided no authority for the proposition that financial hardship is *per se* an "extreme

circumstance" that justifies equitable tolling. Absent such authority, and in light of the ample case law that stands for the proposition that ignorance of the law does not justify tolling the limitations period, there is no clear basis on which the Court can conclude that equitable tolling is warranted here under the Sixth Circuit's five-factor balancing test.

The Court therefore declines to toll the limitations period on the claims asserted in Counts I and III of the Amended Complaint. For that reason, Plaintiff's hybrid claim comprising Counts I and III of his Amended Complaint will be dismissed as time-barred.

The Court will also deny Plaintiff's request to amend his complaint "to address any pleading deficiencies regarding the statute of limitations or otherwise." (Pl.'s Resp. at 4, Pg ID 250.) Plaintiff has not identified or even hypothesized any allegations he could make that would render his hybrid claim sufficient to survive dismissal on untimeliness grounds. Accordingly, any amendment would be futile. *See SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 355 (6th Cir. 2014) ("[C]ourts need not give leave to amend when doing so would be futile. Amending would be futile if a proposed amendment would not survive a motion to dismiss.") (citations omitted) (citing *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) and *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010)).

**B.      Defendant USPS's Motion for Summary Judgment**

USPS also presents a timeliness argument as to Count II of the Amended Complaint (discriminatory termination) in its Motion for Summary Judgment, maintaining that according to record evidence, Plaintiff filed this action approximately nineteen months after the applicable limitations period expired. USPS's argument has merit.

The regulations that govern Title VII proceedings against federal agencies set forth limitations periods within which employees of those agencies who have exhausted their EEO remedies can then file actions in federal court. Specifically, the regulations provide that such a complainant is authorized under Title VII to file "a civil action in an appropriate United States District Court . . . within 90 days of receipt of the final action on an individual . . . complaint if no appeal has been filed." 29 C.F.R. § 1614.407; *see also Rodney v. LaHood*, 359 F. App'x 634, 637 (6th Cir. 2010) ("In a Title VII case, a federal employee has 90 days from receipt of a final agency decision to file suit in district court.") (citing 42 U.S.C. § 2000e–16(c)). Courts presume that "notice is given, 'and hence the ninety-day limitations term begins running, on the fifth day following the [ ] mailing of [a right-to-sue] notification to the claimant[ ].'" *Rembisz v. Lew*, 830 F.3d 681, 682 (6th Cir. 2016) (alterations in original) (quoting *Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 557 (6th Cir. 2000)).

USPS's argument here is that given the rules described above, Plaintiff missed the deadline for filing this lawsuit by approximately 19 months. The argument is well supported, both factually and legally.

The Declaration of Cheryl Hendon and the two exhibits that accompany it establish three critical unrebutted facts: (1) a final decision dismissing Plaintiff's EEO complaint was issued on December 17, 2014 (Hendon Decl. ¶ 5; Final Agency Decision at 1-3.); (2) Hendon mailed that decision to Plaintiff on the same day (Hendon Decl. ¶ 7); and (3) Plaintiff neither appealed the decision nor filed any subsequent EEO complaints (Hendon Decl. ¶¶ 8-9). Thus, Plaintiff presumptively received notice of the dismissal on December 22, 2014, and so he had until March 21, 2015 to file an action in federal court if he did not choose to appeal the decision—and Hendon's Declaration establishes that he did not. Plaintiff filed this action on November 7, 2016 (ECF No. 1.), roughly nineteen and a half months after that deadline.

Plaintiff did respond to USPS's earlier motion for leave to file the Motion for Summary Judgment that is now before the Court. (ECF No. 23.) USPS made clear in that motion what the grounds of the instant Motion would be. Plaintiff did not specifically discuss the issue of the untimeliness of his claims in the response, or provide any specific reason why his discriminatory termination claim should survive summary judgment. Instead, Plaintiff's response simply cites the Court's

Practice Guidelines regarding early summary judgment motions, points out that discovery has not yet occurred, and states that "Plaintiff has a right to fully investigate the matters on which USPS bases its motion before being required to substantively respond to the motion." (ECF No. 27 at 20, Pg ID 266.) That argument, based on this Court's Practice Guidelines, is now moot, since the Court has granted USPS leave to file the instant Motion for Summary Judgment (ECF No. 31), and Plaintiff has failed to file a specific response to that Summary Judgment Motion on Count II.

At the July 31, 2017 hearing, Plaintiff's counsel directed the Court's attention to Plaintiff's Affidavit, which was attached as an exhibit to Plaintiff's earlier response. (Pl.'s Resp. Ex. B, Affidavit of Kevin Tyrone Johnson.) As discussed above, Plaintiff styled that submission as a Rule 56(d) affidavit,[5] and Plaintiff's counsel argued at the July 31, 2017 hearing that the Court should deny summary judgment to USPS for the same reasons urged in the response and Affidavit for denial of the pending Motions to Dismiss. The Court rejects this argument, however, because the averments in the Affidavit pertain only to the

---

[5] Fed. R. Civ. P. 56(d) provides in full:

> (d) **When Facts Are Unavailable to the Nonmovant**. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

allegations surrounding Plaintiff's hybrid claim: namely, the arbitration related to his removal, and APWU's failure to inform him of his options for challenging that arbitration. (*See id.* at 1-3, Pg ID 273-75.) The averments in the Affidavit have nothing to do with Plaintiff's allegedly discriminatory termination, his subsequent EEO complaint, or any conceivable reason for his failure to either appeal or file suit within 90 days of that complaint's dismissal. Accordingly, the Court will not allow discovery or otherwise defer decision of USPS's Motion for Summary Judgment on the basis of the Affidavit.

Finally, while Count II of the Amended Complaint also appears to assert a retaliation claim under the Family and Medical Leave Act ("**FMLA**"), 29 U.S.C. § 2615 (Am. Compl. ¶ 26), any FMLA claim based on the allegations in the Amended Complaint would be time-barred as well. The FMLA provides that a retaliation action "may be brought . . . not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought[,]" and extends the limitations period to three years for willful violations. 29 U.S.C. § 2617(c)(1)-(2). Nothing in the Amended Complaint indicates that Plaintiff is alleging a willful violation of the FMLA, and so the limitations period would be two years. USPS reinstated Plaintiff's termination on April 6, 2014, and Plaintiff filed this lawsuit on November 7, 2016, just over six months after the two-year limitations period expired.

In the end, USPS has put forward competent evidence that it is entitled to summary judgment on Plaintiff's claims in Count II as a matter of law. Plaintiff has provided no specific response in opposition to this. The Court will therefore grant USPS's Motion for Summary Judgment on the basis of Plaintiff's failure to file this action within the limitations period.

## IV.     CONCLUSION

For the reasons set forth above, the Court hereby GRANTS Defendant USPS's Motion to Dismiss Count I (ECF No. 22), GRANTS Defendant APWU's Motion to Dismiss Count III (ECF No. 25), and GRANTS Defendant USPS's Motion for Summary Judgment on Count II (ECF No. 32). This action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: September 11, 2017

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 11, 2017.

s/D. Tofil
Deborah Tofil, Case Manager